## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LAWRENCE BODNER,  Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AEGERION PHARMACEUTICALS, INC., MARC D. BEER, MARK J. FITZPATRICK, ANNE MARIE COOK, and MARK SUMERAY M.D.<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Civil Action No.:**<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Lawrence Bodner ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Aegerion Pharmaceuticals, Inc. ("Aegerion" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Aegerion shares between March 15, 2012 and January 9, 2014, both dates inclusive (the "Class Period") seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Aegerion Pharmaceuticals, Inc., is a biopharmaceutical company, engaged in the development and commercialization of novel therapeutics to treat debilitating and fatal rare diseases in the United States. The Company's products include JUXTAPID (lomitapide) capsules, an adjunct to a low-fat diet and other lipid-lowering treatments in patients with homozygous familial hypercholesterolemia. Aegerion Pharmaceuticals, Inc. was founded in 2005 and is headquartered in Cambridge, Massachusetts.

3.     The Food, Drug and Cosmetic Act and the U.S. Food and Drug Administration ("FDA") play a major role in the oversight of the Company's products.   Under the Food, Drug, and Cosmetic Act ("FDCA") at U.S.C. 21 §§301-97, manufacturers are prohibited from directly marketing a drug for a use other than the FDA approved indication. Violating the provisions of the FDCA prohibiting off-label marketing of drugs can cause drug manufacturers significant financial harm to a company, including fines and other penalties. Since May 2004, the country's major drug manufacturers reportedly have paid billions of dollars in fines and penalties for allegedly marketing drugs for off-label use.

4.     Despite feigning compliance with FDA rules and regulations, throughout the Class Period, Aegerion's marketing practices during the Class Period were in violation of the FDCA.   On November 8, 2013, news reports revealed that the Company received an FDA Warning Letter, dated November 8, 2013, addressed to Defendant Beer, (the, "Warning Letter") in connection with statements the Company's CEO made regarding JUXTAPID capsules during broadcast interviews on CNBC's television show, "Fast Money," that aired on June 5, 2013 and October 31, 2013. The Warning Letter stated that Defendant Beer made public statements which "provide evidence that Juxtapid is intended for new uses, for which it lacks approval and for which its labeling does not provide adequate directions for use, which renders Juxtapid misbranded within the meaning of the Federal Food Drug and Cosmetic Act … and makes its distribution violative of the FDCA."

5.     Then, on January 10, 2014, the Company received a subpoena from the U.S. Department of Justice requesting documents regarding its marketing and sale of JUXTAPID.

6.     On this news, Aegerion shares declined $ 7.98 per share, or nearly 11%, to close at $65.77 per share on January 10, 2013.

7.     As further detailed below, during the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about Aegerion's business and financial condition. Specifically, Defendants made false and/or misleading statements and/or failed to disclose to Aegerion investors that: (1) the Company marketed its drugs in violation of the FDCA; (2) as a result, the Company faced heightened regulatory scrutiny by the FDA and other governmental bodies; and (3) as a result of the foregoing, Aegerion's statements were materially false and misleading at all relevant times.

8.    Moreover, during the Class Period, Company insiders sold almost 1,000,000 shares of the Company's stock, yet did not purchase any Aegerion shares.  In October alone, one month prior to Aegerion's receipt of the Warning Letter, Beer sold 40,000 shares of the Company's stock and 785,563 options representing a decrease in ownership of 3.9%; Sandy Smith, a director, sold 22.6% of his shares, while Defendant Mark Sumeray, the Company's Chief Medical Officer, sold 4% of his shares; Craig Fraswer, President of the Company sold 20,000 shares representing a decrease in ownership of 20%.

9.    In addition, during the Class Period, Company insiders sold 217,002 shares at artificially inflated prices, benefiting from their fraud in excess of $15 million, by dumping shares on unsuspecting investors.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

12.    This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because defendants maintain an office in this District, and many of the acts and omissions complained of herein occurred in substantial part in this District.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, purchased Aegerion shares at artificially inflated prices during the Class Period and has been damaged upon the issuance of the alleged corrective disclosures.

16.     Defendant Aegerion is a Delaware corporation with principal executive offices located at 101 Main Street, Suite 1850, Cambridge, Massachusetts.  Aegerion's common stock trades on the NASDAQ Stock Market ("Nasdaq") under the ticker symbol "AEGR."

17.     Defendant Marc D. Beer ("Beer") has served at all relevant times as the Chief Executive Officer and director of Aegerion.

18.     Defendant Mark J. Fitzpatrick ("Fitzpatrick") has served at all relevant times as the Company's Chief Financial Officer and Chief Accounting Officer.

19.     Defendant Anne Marie Cook ("Cook") has served at all relevant times as the Vice President, General Counsel and Secretary of Aegerion.

20.     Defendant Mark Sumeray ("Sumeray") has served at all relevant times as a Chief Medical Officer of Aegerion.

21.     The defendants referenced above in ¶¶ 17 – 20 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.    Aegerion Pharmaceuticals, Inc., is a biopharmaceutical company, engaged in the development and commercialization of novel therapeutics to treat debilitating and fatal rare diseases in the United States. The Company's products include JUXTAPID (lomitapide) capsules, approved as part of an adjunct to a low-fat diet and other lipid-lowering treatments in patients with homozygous familial hypercholesterolemia.

### Defendants' Materially False and Misleading Statements

23.    In an 8-K filed on March 6, 2012 the Company reported its financial results for the quarter ending December 31, 2011, a net loss attributable to common stockholders of $13.9 million, or $0.66 per share, compared with a net loss attributable to common stockholders of $12.1 million, or $0.92 per share, for the same period in 2010. For the full year ended December 31, 2011, net loss attributable to common stockholders was $39.5 million, or $2.03 per share, compared with a net loss attributable to common stockholders of $23.0 million, or $5.07 per share, for the same period in 2010.

24.    On March 15, 2012, the Company filed an annual report for the year ended December 31, 2011 on a Form 10-K with the SEC signed by, among others, Defendants Beer and Fitzpatrick and reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act ("SOX") by Defendants Beer and Fitzpatrick, stating that the financial information contained in the Form 10-K was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

25.    In an 8-K filed on May 1, 2012, the Company reported its financial results for the first quarter ended March 31, 2012.  The Company reported a net loss attributable to common stockholders of $11.7 million, or $0.55 per share, compared with a net loss attributable to common stockholders of $6.8 million, or $0.39 per share, for the same period in 2011.

26.    On May 10, 2012, the Company filed a Form 10-Q with the SEC for the quarter ended March 31, 2012, signed by, among others, Defendants Beer and Fitzpatrick, which reiterated the Company's previously reported financial results and financial position.

27.    On June 15, 2012, Aegerion filed a Prospectus Supplement (the "June 15, 2012 Prospectus Supplement"), which forms part of the Shelf Registration Statement that became effective on December 12, 2011.  Pursuant to the offering, 3,400,000 shares of Aegerion were sold at a price of $16.53 per share, raising approximately $54,356,429 in net proceeds for the Company after underwriting discounts, commissions, and fees. Aegerion informed investors that it would use the net proceeds from the offering to, among other things, fund activities directed at advancement of the clinical development of lomitapide for the treatment of pediatric and adolescent patients with HoFH.

28.    In Aegerion's Supplementary Prospectus, the Company stated that, "[w]e are initially developing our first product candidate, lomitapide, as an oral, once-a-day treatment for patients with a rare inherited lipid disorder called homozygous familial hypercholesterolemia, or HoFH." Moreover, the Company stated "[w]e believe that lomitapide also has the potential to treat patients with certain other life-threatening lipid disorders who are unable to achieve recommended lipid levels on currently available therapies, particularly patients with a severe genetic form of hypertriglyceridemia called familial chylomicronemia, or FC." The Company further stated that "[w]e expect that our near-term efforts will be focused on gaining regulatory

approval of lomitapide in HoFH, including in international markets; launching lomitapide as a treatment for HoFH in the countries in which we receive marketing approval; and developing lomitapide as a treatment for FC."

29.    In an 8-K filed on August 8, 2012, the Company reported its financial results for the second quarter ended June 30, 2012.  The Company reported a net loss attributable to common stockholders of $13.9 million, or $0.63 per share, compared with a net loss attributable to common stockholders of $8.6 million, or $0.49 per share, for the same period in 2011. For the six months ended June 30, 2012, the Company reported a net loss attributable to common stockholders of $25.6 million, or $1.18 per share, compared with a net loss attributable to common stockholders of $15.4 million, or $0.87 per share, for the same period in 2011.

30.    On August 9, 2012, the Company filed a Form 10-Q with the SEC for the quarter ended June 30, 2012, signed by, among others, Defendants Beer and Fitzpatrick, which reiterated the Company's previously reported financial results and financial position.

31.    In an 8-K filed on November 7, 2012 the Company reported its financial results for the third quarter ended September 30, 2012.  The Company reported a net loss of $14.9 million, or $0.59 per share, compared with a net loss of $10.1 million, or $0.48 per share, for the same period in 2011. For the nine months ended September 30, 2012, the Company reported a net loss of $40.5 million, or $1.76 per share, compared with a net loss of $25.6 million, or $1.36 per share, for the same period in 2011.

32.    On November 9, 2012, the Company filed a Form 10-Q with the SEC for the quarter ended September 30,2012, signed by, among others, Defendants Beer and Fitzpatrick, which reiterated the Company's previously reported financial results and financial position.

33.    On January 14, 2013, Aegerion made on offering pursuant to the Company's shelf registration statement.

34.    Pursuant to the offering, 3,110,449 shares of common stock of Aegerion were sold at a price of $25.1082 per share, raising approximately $78.1 million in net proceeds for the Company after underwriting discounts, commissions, and fees. Aegerion used the net proceeds from the offering, for the following purposes:

> to fund activities directed at commercial launch of JUXTAPID in the U.S.; pursuing approval of our MAA submission with the EMA for lomitapide, and, if it is approved, commercial activities in the E.U.; expansion of operations in certain countries to pursue regulatory approval of lomitapide and to conduct sales on a named-patient-sales basis, where permitted; advancement of the clinical development of lomitapide; and business development activities; with any remainder to fund working capital, capital expenditures and for other general corporate purposes.

35.    In an 8-K filed on March 6, 2013, the Company reported its financial results for the fourth-quarter ended December 31, 2012.   The Company reported a net loss of $21.8 million, or $0.86 per share, compared with a net loss of $13.9 million, or $0.66 per share, for the same period in 2011. For the year-ended December 31, 2012, the Company's net loss was $62.3 million, or $2.64 per share, compared with a net loss of $39.5 million, or $2.03 per share, for the same period in 2011.

36.    On March 18, 2013, the Company filed an annual report for the year ended December 31, 2012 on a Form 10-K with the SEC signed by, among others, Defendants Beer and Fitzpatrick, which reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Beer and Fitzpatrick, stating that the financial information contained in the Form

10-K was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

37.    In an 8-K filed on April 30, 2013 the Company reported its financial results for the first-quarter ended March 31, 2013.  The Company reported a net loss of $18.1 million, or $0.64 per share, compared with a net loss of $11.7 million, or $0.55 per share, for the same period in 2012.

38.    On May 10, 2013, the Company filed a Form 10-Q with the SEC for the quarter ended March 31, 2013, signed by, among others, Defendants Beer and Fitzpatrick, which reiterated the Company's previously reported financial results and financial position.

39.    In an 8-K filed on July 30, 2013, the Company reported its financial results for the second-quarter ended June 30, 2013.  The Company reported a net loss of $18.9 million, or $0.66 per share, compared with a net loss of $13.9 million, or $0.63 per share, for the same period in 2012. For the six months ended June 30, 2013, the Company reported a net loss of $37.0 million, or $1.30 per share, compared with a net loss of $25.6 million, or $1.18 per share, for the same period in 2012.

40.    That same day, the Company filed a Form 10-Q with the SEC for the quarter ended March 31, 2013, signed by, among others, Defendants Beer and Fitzpatrick, which reiterated the Company's previously reported financial results and financial position.

41.    In an 8-K filed on July 30, 2013, the Company reported its financial results for the second-quarter ended June 30, 2013.  The Company reported a net loss of $18.9 million, or $0.66 per share, compared with a net loss of $13.9 million, or $0.63 per share, for the same period in 2012. For the six months ended June 30, 2013, the Company reported a net loss of

$37.0 million, or $1.30 per share, compared with a net loss of $25.6 million, or $1.18 per share, for the same period in 2012.

42.    On August 9, 2013, the Company filed a Form 10-Q with the SEC for the quarter ended June 30, 2013, signed by, among others, Defendants Beer and Fitzpatrick, which reiterated the Company's previously reported financial results and financial position.

43.    In an 8-K filed on October 30, 2013, the Company reported its financial results for the third-quarter ended September 30, 2013.  The Company reported a net loss of $12.5 million, or $0.43 per share, compared with a net loss of $14.9 million, or $0.59 per share, for the same period in 2012. For the nine months ended September 30, 2013, the Company reported a net loss of $49.5 million, or $1.72 per share, compared with a net loss of $40.5 million, or $1.76 per share, for the same period in 2012.

44.    On November 8, 2013, the Company filed a Form 10-Q with the SEC for the quarter ended September 30, 2013, signed by, among others, Defendants Beer and Fitzpatrick, which  reiterated the Company's previously reported financial results and financial position.

45.    The statements referenced in ¶¶ 23-44 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that:  (1) the Company marketed its drugs in violation of the FDCA; (2) as a result, the Company faced heightened regulatory scrutiny by the FDA and other governmental bodies; and (3) as a result of the foregoing, Aegerion's statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

46.     On November 8, 2013, news reports revealed that the Company received an FDA Warning Letter addressed to Defendant Beer, in connection with statements the Company's CEO made regarding the market for its JUXTAPID capsules, during broadcast interviews on CNBC's television show, "Fast Money," that aired on June 5, 2013 and October 31, 2013. The Warning Letter stated that Defendant Beer made public statements which "provide evidence that Juxtapid is intended for new uses, for which it lacks approval and for which its labeling does not provide adequate directions for use, which renders Juxtapid misbranded within the meaning of the Federal Food Drug and Cosmetic Act ("FDCA") and makes its distribution violative of the FDCA."

47.     The Warning Letter criticized Defendant Beer's statements regarding the safety and effectiveness of Juxtapid, stating in relevant part:

> These statements misleadingly suggest that Juxtapid is safe and effective for use in decreasing the occurrence of cardiovascular events including heart attacks and strokes, and increasing the lifespan of patients with HoFH, and thus will have an effect on cardiovascular morbidity and mortality as well as overall mortality. However, Juxtapid is approved only for use as an adjunct to a low-fat diet and other lipid lowering treatments, to reduce specific lipids … in patients with HoFH; its PI specifically includes a limitation of use stating that the effect of the drug on cardiovascular morbidity and mortality has not been determined. Furthermore, the statements made regarding Juxtapid misleadingly suggest that Juxtapid is safe and effective as a monotherapy. Juxtapid's labeling limits its use to use as an adjunct to other therapies, and use as a monotherapy is an unapproved use. The approved labeling for Juxtapid does not provide instructions for, or otherwise indicate that Juxtapid will be safe and effective if used, either to reduce the occurrence of cardiovascular events in HoFH patients and to increase their lifespans, or as a stand-alone therapy for reducing lipids in these patients. Information sufficient to demonstrate that Juxtapid is safe and effective for any of these new intended uses has not been submitted to FDA in an application.

In sum, the statements cited above provide evidence that Juxtapid is intended for new uses which it lacks approval, and for which its labeling does not provide adequate directions for use.

Additionally, while the statements cited above include substantial and repeated efficacy claims for Juxtapid, the presentation fails to communicate any of the risks associated with these new intended uses or its approved use. As previously noted, Juxtapid's PI in fact includes a Boxed Warning regarding potential liver toxicity, and the product is subject to an associated REMS. The repeated statements regarding Juxtapid, including the claims that patients taking the drug will "meet their grandchildren," misleadingly suggest that Juxtapid lacks significant risks.

**Conclusion and Requested Action**

For the reasons discussed above, your statements provide evidence that Juxtapid is intended for new uses, for which it lacks approval and for which its labeling does not provide adequate directions for use, which renders Juxtapid misbranded within the meaning of the FD&C Act and makes its distribution violative of the FD&C Act. See 21 U.S.C. 352(f)(1), 331(a); 21 CFR 201.5, 201.100, 201.115, 201.128.

OPDP requests that Aegerion immediately cease misbranding Juxtapid and introducing it into interstate commerce for unapproved uses for which it lacks adequate directions. Please submit a written response to this letter on or before November 22, 2013, stating whether you intend to comply with this request, listing any promotional materials (with the 2253 submission date) for Juxtapid that contain statements such as those described above, and explaining your plan for discontinuing use of such materials or, in the alternative, your plan to cease distribution of Juxtapid. Because the violations described above are serious, we request, further, that your submission include a comprehensive plan of action to disseminate truthful, non-misleading, and complete corrective messages about the issues discussed in this letter to correct any misimpressions about the approved use of Juxtapid.

48.    Thereafter, on January 10, 2014, the Company received a subpoena from the U.S.

Department of Justice requesting documents regarding its marketing and sale of JUXTAPID.

49.    On this news, Aegerion shares declined $7.98 per share, or nearly 11%, to close at

$65.77 per share on January 10, 2013.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired Aegerion shares during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of Aegerion, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Individual Defendants have or had a controlling interest.

51.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Aegerion shares were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

52.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

53.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

54.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, and prospects of Aegerion;

- whether defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading

- whether the defendants caused Aegerion to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Aegerion shares during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

55.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

56.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Aegerion shares met the requirements for listing, and were listed and actively traded on the NASDAQ Global Select Market, a highly efficient and automated market;

- As a public issuer, Aegerion filed periodic public reports with the SEC and the NASDAQ;

- Aegerion regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Aegerion was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

57.     Based on the foregoing, the market for Aegerion shares promptly digested current information regarding Aegerion from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

58.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

59.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

61.    During the Class Period, defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Aegerion common stock during the Class Period.

63.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Aegerion were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or

dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Aegerion, their control over, and/or receipt and/or modification of Aegerion's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Aegerion, participated in the fraudulent scheme alleged herein.

64.     The Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Aegerion personnel to members of the investing public, including Plaintiff and the Class.

65.     As a result of the foregoing, the market price of Aegerion common stock was artificially inflated during the Class Period. In ignorance of the falsity of the statements by defendants, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Aegerion securities during the Class Period in purchasing Aegerion common stock at prices that were artificially inflated as a result of defendants' false and misleading statements.

66.     Had Plaintiff and the other members of the Class been aware that the market price of Aegerion common stock had been artificially and falsely inflated by defendants' misleading statements and by the material adverse information which defendants did not disclose, they would not have purchased Aegerion common stock at the artificially inflated prices that they did, or at all.

67.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

68.     By reason of the foregoing, defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Aegerion common stock during the Class Period.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

69.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70.     During the Class Period, the Individual Defendants participated in the operation and management of Aegerion, and conducted and participated, directly and indirectly, in the conduct of Aegerion's business affairs.   Because of their senior positions, they knew the adverse non-public information about Aegerion's misstatement of income and expenses and false financial statements.

71.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Aegerion's financial condition and results of operations, and to correct promptly any public statements issued by Aegerion which had become materially false or misleading.

72.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Aegerion disseminated in the marketplace during the Class Period concerning Aegerion's results of operations.   Throughout the Class Period, the

Individual Defendants exercised their power and authority to cause Aegerion to engage in the wrongful acts complained of herein. Individual Defendants therefore, were "controlling persons" of Aegerion within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Aegerion.

73.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Aegerion.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and,

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  January 15, 2014                          Respectfully submitted by:

### BLOCK & LEVITON LLP

Jason M. Leviton
Leigh E. O'Neil
Joel A. Fleming
155 Federal Street, Suite 1303
Boston, MA 02110
Telephone:  (617) 398-5600
Facsimile:  (617) 507-6020
Jason@blockesq.com
Leigh@blockesq.com
Joel@blockesq.com

### POMERANTZ LLP

Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
lfportnoy@pomlaw.com

### POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*