**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KBC ASSET MANAGEMENT NV, et al., Individually and on Behalf of All Others Similarly Situated, | ) No. 1:14-cv-10105-MLW ) ) <u>CLASS ACTION</u> ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| AEGERION PHARMACEUTICALS, INC., et al., | ) ) |
| Defendants. | ) ) |
| ———————————————————— | ) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
**CERTIFICATION OF A SETTLEMENT CLASS, AND**
**APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.     INTRODUCTION ............................................................................................1

II.    BACKGROUND OF THE LITIGATION.........................................................2

III.   BRIEF SUMMARY OF THE PROPOSED SETTLEMENT ...........................5

       A.    The Class....................................................................................................5

       B.    Settlement Consideration ..........................................................................6

       C.    Release Of Claims.....................................................................................6

       D.    Entry Of Order And Final Judgment ........................................................7

       E.    Fee And Expense Application ...................................................................7

IV.    CERTIFICATION OF THE CLASS IS APPROPRIATE ................................8

V.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................10

       A.    The Negotiations Occurred At Arm's Length With The Substantial
             Assistance Of Highly Experienced Mediators.......................................12

       B.    Lead Plaintiffs Had Sufficient Information To Determine The Propriety Of
             Settlement ...............................................................................................14

       C.    Experienced Counsel Recommend The Settlement.................................15

       D.    Number of Objections.............................................................................16

VI.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND MANNER
       OF CLASS NOTICE AND THE PROOF OF CLAIM AND RELEASE........................17

VII.   PROPOSED SCHEDULE OF EVENTS.........................................................19

VIII.  CONCLUSION...............................................................................................20

# TABLE OF AUTHORITIES

### CASES

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................... 8

*City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*,
  100 F.3d 1041 (1st Cir. 1996) ..................................................................................... 8

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ........................................................................................ 13

*Durrett v. Housing Authority of Providence*,
  896 F.2d 600 (1st Cir. 1990) ..................................................................................... 12

*Eisen v. Porsche Cars North America, Inc.*,
  No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ................. 13, 15

*Hill v. State Street Corp.*,
  No. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ............................... 17

*Hochstadt v. Boston Scientific Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ................................................................. passim

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*,
  216 F.R.D. 197 (D. Me. 2003) ................................................................................... 18

*In re Credit Suisse-AOL Securities Litigation*,
  253 F.R.D. 17 (D. Mass. 2008) ................................................................................... 9

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
  No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......... 5, 15

*In re Lupron® Marketing & Sales Practices Litigation*,
  228 F.R.D. 75 (D. Mass. 2005) ............................................................................. 8, 10

*In re Lupron® Marketing & Sales Practices Litigation*,
  345 F. Supp. 2d 135 (D. Mass. 2004) ....................................................................... 12

*In re M3 Power Razor System Marketing & Sales Practice Litigation*,
  270 F.R.D. 45 (D. Mass. 2010) ....................................................................... 8, 16, 17

*In re NASDAQ Market-Makers Antitrust Litigation*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................. 16

*In re Ocean Power Technologies, Inc., Securities Litigation*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ............................... 15

*In re Pharmaceutical Industry Average Wholesale Price Litigation*,
  588 F.3d 24 (1st Cir. 2009) ....................................................................................... 10

*In re Prudential Securities Inc. Ltd. Partnerships Litigation*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................................... 16

*In re Prudential Securities Inc. Ltd. Partnerships Litigation*,
  164 F.R.D. 362 (S.D.N.Y. 1996) ................................................................. 17

*In re Puerto Rican Cabotage Antitrust Litigation*,
  269 F.R.D. 125 (D.P.R. 2010) .................................................................... 11

*In re Ravisent Technologies, Inc. Securities Litigation*,
  No. Civ.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ....................... 15

*In re Sonus Networks, Inc. Securities Litigation*,
  247 F.R.D. 244 (D. Mass. 2007) ................................................................. 10

*In re StockerYale, Inc. Securities Litigation*,
  No. 1:05cv00177-SM, 2007 WL 2410361 (D.N.H. Aug. 21, 2007) ................... 10, 18

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................... 14

*In re Zurn Pex Plumbing Products Liability Litigation*,
  No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) ............... 16

*Lazar v. Pierce*,
  757 F.2d 435 (1st Cir. 1985) ..................................................................... 10

*Linney v. Cellular Alaska Partnership*,
  151 F.3d 1234 (9th Cir. 1998) .................................................................... 14

*Lliguichuzhca v. Cinema 60, LLC*,
  948 F. Supp. 2d 362 (S.D.N.Y. 2013) ........................................................... 15

*Maley v. Del Global Technologies Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................... 14

*National Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*,
  582 F.3d 30 (1st Cir. 2009) ....................................................................... 12

*Rieckborn v. Velti PLC*,
  No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ....................... 15

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000) ..................................................................... 16

*Simmons v. Enterprise Holdings, Inc.*,
  No. 4:10CV00625AGF, 2012 WL 2885919 (E.D. Mo. July 13, 2012) ..................... 13

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
  323 F.3d 32 (1st Cir. 2003) ........................................................................ 8

*United States v. Comunidades Unidas Contra la Contaminacion*,
  204 F.3d 275 (1st Cir. 2000) ..................................................................... 10

*Waste Management Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000) ....................................................................... 8

*Yang v. Focus Media Holding Ltd.*,
  No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............... 5

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................... 14

## STATUTES

15 U.S.C. § 78u-4(a)(4) .......................................................................................................... 7

15 U.S.C. § 78u-4(a)(7) .......................................................................................................... 18

## RULES

Fed. R. Civ. P. 23(e) .............................................................................................................. 10

Fed. R. Civ. P. 23(e)(1) .......................................................................................................... 17

## TREATISES & ARTICLES

*Manual for Complex Litigation, Fourth* (4th ed. 2004)........................................................ 10, 11

## I.    INTRODUCTION

Court-appointed Lead Plaintiffs KBC Asset Management NV ("KBC"), Sheet Metal Workers' National Pension Fund ("Sheet Metal Workers"), and Chester County Employees Retirement Fund ("Chester County," and with KBC and Sheet Metal Workers, "Lead Plaintiffs") respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Settlement, on the terms set forth in the Stipulation of Settlement dated January 17, 2017 ("Settlement Agreement" or "Settlement"),[1] which is being filed concurrently herewith.  The Settlement provides for the payment of $22,250,000 in cash to resolve completely this securities class action against all Defendants.[2]

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs respectfully request this Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Notice Order"):  (1) granting preliminary approval of the Settlement; (2) certifying the Class pursuant to Rules 23(a) and (b)(3) for purposes of effectuating the Settlement; (3) directing that Class Members be given notice of the pendency and settlement of this Litigation; (4) setting a hearing date for the Court to consider final approval of the proposed Settlement, the Plan of Allocation, and Lead Counsel's request for an award of attorneys' fees and expenses (the "Fee and Expense Application"), which may include a request for reimbursement of Lead Plaintiffs' time and expenses representing the Class in the Litigation ("Settlement Hearing"); and (5) setting a schedule for various events related thereto.

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Settlement Agreement.

[2] Defendants are Aegerion Pharmaceuticals, Inc. ("Aegerion" or the "Company"), Marc D. Beer ("Beer"), Craig Fraser ("Fraser"), and Mark J. Fitzpatrick ("Fitzpatrick").

The parties have negotiated at arm's length a settlement of the claims asserted on behalf of all Persons who purchased or otherwise acquired Aegerion publicly traded common stock between April 30, 2013 and May 11, 2016, inclusive (the "Class Period").  The Settlement amount of $22.25 million in cash represents a significant recovery for Class Members.  Although Lead Plaintiffs believe in the merits of their case, they recognize that they would face substantial obstacles in establishing liability and damages should this case proceed to trial, especially in light of the fact that the case has not yet survived a motion to dismiss.  Furthermore, even if this case were to proceed to trial, Defendants could appeal any judgment favorable to the Class, putting at risk, or otherwise delaying, any recovery to Class Members.  Additionally, even if Lead Plaintiffs were able to obtain a favorable judgment, the Company's relatively limited financial resources and available insurance would render collectability highly problematic, at best.  This is an especially important consideration given that Aegerion's new parent company, Novelion Therapeutics Inc., is not liable for any of Aegerion's liabilities following a recent merger between Aegerion and QLT Inc.

For the reasons discussed herein, the Settlement is a favorable result for the Class under the totality of the circumstances.  Moreover, the Settlement satisfies the governing standards in this Circuit, and is well within the range of fairness, adequacy, and reasonableness so as to warrant the Court's preliminary approval and authorization for dissemination of notice to Class Members.

## II.    BACKGROUND OF THE LITIGATION

This is a securities class action asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of Persons who purchased or otherwise acquired Aegerion common stock during the Class Period.

On January 15, 2014, Plaintiff Lawrence Bodner filed a class action complaint titled *Bodner v. Aegerion Pharmaceuticals, Inc., et al.*, No. 1:14-cv-10105 (D. Mass.) (ECF No. 1)

against Aegerion, Beer, Fitzpatrick, Annie Marie Cook ("Cook"), and Mark Sumeray ("Sumeray").   On March 10, 2015, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court appointed KBC, Sheet Metal Workers, and Chester County as Lead Plaintiffs and appointed Motley Rice LLC ("Motley Rice") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.   ECF No. 31.

On June 1, 2015, Lead Plaintiffs filed an Amended Class Action Complaint (the "Amended Complaint") (ECF No. 46) that centered on allegations that, during a class period of January 10, 2014 to October 30, 2014, Defendants issued a series of false and misleading statements and/or failed to disclose material facts regarding certain key Company metrics that Aegerion utilized to forecast its annual revenue guidance, including its dropout rates (i.e., how long a patient stays on a particular drug), as well as patient-elected non-starts (i.e., if a patient actually fills a prescription). Following an extensive investigation, Lead Plaintiffs added Fraser as a defendant, along with original defendants Aegerion, Beer, and Fitzpatrick, but did not name Cook or Sumeray as defendants.   Lead Plaintiffs alleged that as a result of Defendants' false statements and omissions, the Company's share price was artificially inflated during the as-pleaded class period and investors suffered damages through a series of partial revelations in 2014.

On July 31, 2015, Defendants moved to dismiss the Amended Complaint.   ECF No. 53.   In response to Defendants' motion to dismiss, Lead Plaintiffs filed the Second Amended Class Action Complaint (the "Second Amended Complaint") on August 21, 2015.   ECF No. 56.   The Second Amended Complaint alleged claims against the Company, Beer, Fraser, Sumeray, and Fitzpatrick. The Second Amended Complaint expanded on the Amended Complaint by, among other things: (i) lengthening the alleged class period from that pleaded in the Amended Complaint (January 10, 2014 to October 30, 2014, inclusive) to April 30, 2013 to October 30, 2014, inclusive; and

(ii) alleging that, unbeknownst to investors, Defendants illegally marketed its core product, JUXTAPID, beyond its FDA-approved label.

In response, on September 4, 2015, Defendants (collectively) and Sumeray (with Defendants and individually) moved to strike the Second Amended Complaint as being impermissibly filed.  ECF Nos. 62-64.  Lead Plaintiffs filed an omnibus opposition to Defendants' motions to strike on September 18, 2015 (ECF No. 66), and Defendants filed replies in further support of their motions to strike on January 25 and 26, 2016 (ECF Nos. 77-78).  The Court heard oral argument on Defendants' motions to strike on March 9, 2016.  Following that hearing, on March 23, 2016, Lead Plaintiffs filed a motion for leave to file the Second Amended Complaint. ECF No. 95.  Defendants opposed.  ECF Nos. 100-01.  The Court then heard oral argument on Lead Plaintiffs' motion on April 29, 2016.

On May 12, 2016, Aegerion announced preliminary agreements in principle between the Company, on the one hand, and the Department of Justice ("DOJ") and the staff of the Securities and Exchange Commission ("SEC"), on the other, to settle those agencies' ongoing investigations into Aegerion's sales activities and disclosures related to JUXTAPID.  On May 13, 2016, the parties filed a Joint Motion for Leave to File Third Amended Complaint to include allegations related to these proposed settlements, which the Court granted on May 16, 2016.  ECF Nos. 115-16.  The parties agreed that the operative class period would be April 30, 2013 through May 11, 2016, inclusive, and that a further complaint would assert claims against Aegerion, Beer, Fraser, and Fitzpatrick.   On June 27, 2016, Lead Plaintiffs filed the Third Amended Class Action Complaint ("Third Amended Complaint").  ECF No. 123.

Following the filing of the Third Amended Complaint, Lead Plaintiffs and Defendants engaged in mediation proceedings before Judge Daniel Weinstein (Ret.) ("Judge Weinstein") and

Jed D. Melnick, Esq. ("Mr. Melnick"), highly experienced and skilled mediators of complex actions.[3]  Prior to the November 14, 2016 mediation, Lead Plaintiffs and Defendants exchanged detailed mediation statements setting forth their respective positions.  In addition, Defendants made a pre-mediation presentation to Lead Counsel regarding the Company's financial position and future prospects.  Although the strengths and weaknesses of the parties' respective positions were fully vetted at the mediation, no agreement to settle was reached.  However, following continued negotiations with the assistance of the mediators, on December 2, 2016, the parties did reach an agreement-in-principle to settle the Litigation.  The parties thereafter engaged in negotiations regarding the final terms of the Settlement and executed the Settlement Agreement on January 17, 2017.

## III.   BRIEF SUMMARY OF THE PROPOSED SETTLEMENT

### A.   The Class

KBC, Sheet Metal Workers, and Chester County, as Lead Plaintiffs and the proposed Class Representatives for the Class, and Lead Counsel as proposed Class Counsel, negotiated the proposed Settlement on behalf of a Class consisting of all Persons who purchased or otherwise acquired Aegerion's publicly traded common stock between April 30, 2013 and May 11, 2016, inclusive (the "Class").[4]

---

[3] *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) ("The presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation supervised by Judge Weinstein."); *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) ("Mr. Melnick's role in the settlement negotiations overcomes any hesitation this court might have about approving a settlement reached prior to any discovery. . . . The participation of this highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion.").

[4] Excluded from the Class are:  Defendants, the officers and directors of Aegerion during the Class Period, members of their immediate families and their legal representatives, heirs, successors or

### B.       Settlement Consideration

As consideration for the Settlement, Aegerion, on behalf of Defendants, has agreed to pay or cause to be paid $22,250,000 in cash into a separate interest-bearing account maintained by the Escrow Agent within twelve (12) business days of the date of entry of the Notice Order, which is attached as Exhibit A to the Settlement Agreement and is being filed concurrently.  This is not a claims made settlement.  Defendants will not have a reversionary interest in the Net Settlement Fund.  Settlement Agreement ¶ 2.10.

### C.       Release Of Claims

In return for the above consideration, Class Members will release all claims, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether direct or derivative, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, which arise out of or relate in any way to both:  (i) the purchase or acquisition of shares of Aegerion publicly traded common stock during the Class Period, and (ii) the acts, facts, statements, or omissions that were or could have been alleged by Lead Plaintiffs or any Class Member in the Litigation.

---

assigns, and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class is any Class Member that validly and timely requests exclusion in accordance with the requirements set by the Court.

### D.      Entry Of Order And Final Judgment

Upon determination by the Court that the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Class, the parties will ask the Court to enter the [Proposed] Order and Final Judgment (Exhibit B to the Settlement Agreement).  The Order and Final Judgment provides, *inter alia*, that upon the Effective Date, Lead Plaintiffs and each of the Class Members who have not timely and validly opted out of the Class, are permanently barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement against Defendants or any Released Persons in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Claims (including Unknown Claims), as well as any other claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Litigation or the Released Claims.

### E.      Fee And Expense Application

Under the Settlement Agreement, and as provided for in the Notice, Lead Counsel may submit an application or applications ("Fee and Expense Application") for distributions to them from the Settlement Fund for:  (a) an award of attorneys' fees of 25% of the Settlement Fund; (b) payment of litigation expenses up to $250,000 incurred in connection with prosecuting the Litigation; (c) interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid); and (d) reimbursement of one or more of Lead Plaintiffs' time and expenses incurred in representing the Class in the Litigation.[5]

---

[5] *See* 15 U.S.C. § 78u-4(a)(4) (permitting "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

## IV.    CERTIFICATION OF THE CLASS IS APPROPRIATE

Before preliminarily determining whether the proposed Settlement is fair, this Court "must determine whether to certify the class for settlement purposes." *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 101 (D. Mass. 2010).  When "'[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)) (alteration in original).  Nevertheless, "[w]hen a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re Lupron® Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005).  "This cautionary approach notwithstanding, the law favors class action settlements." *Id.* (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

Under the terms of the Settlement Agreement, the parties have agreed – for the purpose of settlement – to certification of the Class.  Notwithstanding, "[t]o obtain class certification, the plaintiff must establish the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)." *Hochstadt*, 708 F. Supp. 2d at 102 (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003)).

Securities class actions are ideally suited for class treatment.  *See, e.g.*, *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 56 (D. Mass. 2010) ("[S]ome types of cases are uniquely well-suited to class adjudication, and '[p]redominance is a test readily met in certain cases alleging consumer or securities fraud.'") (second alteration in original).  In addition, "[i]nvestors seeking damages for violations of federal securities are often considered the

prototypical class action plaintiffs." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 31

(D. Mass. 2008). Here, Lead Plaintiffs assert that the requirements of Rules 23(a) and (b)(3) of

the Federal Rules of Civil Procedure have been satisfied in that:

a.   the proposed Class is so numerous that joinder of all members is impracticable as there were millions of shares of Aegerion common stock outstanding during the Class Period, held by hundreds or thousands of shareholders geographically dispersed across the country;

b.   based on Lead Plaintiffs' allegations that Defendants purportedly engaged in uniform misconduct affecting the Class Members, the claims of Lead Plaintiffs are typical of the claims of the proposed Class they seek to represent;

c.   Lead Plaintiffs do not have any interests antagonistic to, or in conflict with, the other Members of the Class and they have fairly and adequately represented and protected the interests of the other Class Members as they have retained counsel competent and experienced in class and securities litigation;

d.   there are questions of law or fact common to the Class which predominate over any questions solely affecting individual Members of the Class, including: (i) whether the federal securities laws were violated by Defendants' acts; (ii) whether Defendants omitted and/or misrepresented material facts; (iii) the method for determining whether the price of Aegerion common stock was artificially inflated during the Class Period; (iv) the amount of any such alleged inflation; (v) whether there was any wrongdoing on the part of Defendants; (vi) the extent that various facts alleged by Lead Plaintiffs influenced the trading price of Aegerion common stock during the Class Period; and (vii) whether the facts alleged were material, false or misleading, and otherwise actionable under the federal securities laws; and

e.   given that joinder of all Class Members is impracticable, certifying a Class is superior to all other available methods for the fair and efficient adjudication of this controversy since prosecuting separate actions by or against individual Class Members would create a risk of: (i) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants; and (ii) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not

> parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

*See* Third Am. Compl. ¶¶ 396-401; *see also In re StockerYale, Inc. Sec. Litig.*, No. 1:05cv00177-SM, 2007 WL 2410361, at *1 (D.N.H. Aug. 21, 2007) (concluding requirements of Rules 23(a) and 23(b)(3) were satisfied for purposes of preliminary settlement approval); *In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 248 (D. Mass. 2007) ("[I]n a securities class action, a plaintiff can generally demonstrate numerosity on the basis of a large number of shares outstanding and traded."). Accordingly, the Court should certify the Class.

## V.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

As a matter of public policy, settlement is a highly favored means of resolving disputes. *See United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) (noting "the strong public policy in favor of settlements"). This is especially so in the context of complex class action litigation. *See In re Lupron®*, 228 F.R.D. at 88 ("[T]he law favors class action settlements."); *see also Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) ("[W]e should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved.").

Under Rule 23(e), claims of a certified class may be settled "only with the court's approval." Fed. R. Civ. P. 23(e). The purpose of requiring court approval of a class action settlement is to ensure that the settlement is fair, adequate, and reasonable. *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009). In determining whether to approve the proposed Settlement, the Court should follow the two-step process outlined in the *Manual for Complex Litigation, Fourth* ("*Manual*"), §§ 21.632-35 (4th ed. 2004). *See, e.g.*, *Hochstadt*, 708 F. Supp. 2d at 97 n.1, 106-08 (applying the *Manual*'s two-step process).

The first step of the process is for the Court to review the terms of the Settlement and "make a 'preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Hochstadt*, 708 F. Supp. 2d at 107 (quoting *Manual* at § 21.632). At this stage, the Court should examine whether the proposed Settlement is within the range of possible approval, bearing in mind that the Court, as well as any objectors, will have the opportunity to consider all of the relevant factors at a settlement fairness hearing. *See, e.g.*, *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) ("At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval."). Unless this preliminary evaluation discloses reasons to doubt the fairness of the Settlement or other obvious deficiencies, the Court should grant the motion for preliminary approval, direct that notice of the terms of the Settlement be directed to the Class, and set the date for a final approval hearing.

The second step of the process, in the event the Court preliminarily approves the Settlement, provides for a formal fairness hearing at which arguments and evidence may be presented in support of, or in opposition to, the Settlement. *See Manual* § 21.634. Prior to any final approval hearing here, Lead Counsel will have submitted briefs and other documents in support of the Settlement, Plan of Allocation, and the Fee and Expense Application as well as responded to any objections. The Court will then be able to determine fully whether the Settlement and Plan of Allocation are fair, reasonable, and adequate and evaluate the reasonableness of Lead Counsel's Fee and Expense Application.

Here, the Court should preliminarily approve the Settlement. It is well-established in this Circuit that there is a "'clear policy in favor of encouraging settlements.'" *Durrett v. Housing*

*Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). While the parties still must show that the Settlement is reasonable under Rule 23, the "district court enjoys considerable range in approving or disapproving a class action settlement, given the generality of the standard." *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 45 (1st Cir. 2009). As explained by the First Circuit:

> Rule 23's reasonableness standard has been given substance by case law offering laundry lists of factors, most of them intuitively obvious and dependent largely on variables that are hard to quantify; usually, the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.

*Id*. at 44.

The task of balancing the benefits and costs of a proposed settlement is routinely accomplished by an evaluation of four factors. Indeed, "a presumption of fairness attaches to the court's preliminary fairness determination when '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Hochstadt*, 708 F. Supp. 2d at 107 (quoting *In re Lupron® Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004)). For the reasons set forth below, three of these four factors weigh heavily in favor of preliminary approval of the Settlement, and a determination of the fourth factor is premature.

### A.    The Negotiations Occurred At Arm's Length With The Substantial Assistance Of Highly Experienced Mediators

In arriving at the Settlement, the parties agreed to utilize the services of Judge Weinstein and Mr. Melnick, two well-respected mediators with significant experience in mediating complex litigation, including securities class action litigation. *See supra* Part II & note 3. Prior to the mediation, the parties drafted detailed mediation statements, which were provided to Judge Weinstein and Mr. Melnick and exchanged among the parties. The parties' mediation statements

detailed their respective positions, highlighted the factual and legal issues in dispute, and cited to supporting documents.   Prior to the mediation, Defendants also made a presentation to the mediators and Lead Counsel regarding the Company's financial position and available insurance.

At the November 14, 2016 mediation, the parties' positions, including the strengths and weaknesses of their respective claims and defenses, as well as the Company's ability to fund any potential verdict in favor of the Class, were fully explored.   Although no agreement to settle was reached at the mediation, the parties developed a better understanding of each other's position by the end of the session.   Following further negotiations conducted under the auspices of the mediators, the parties ultimately reached an agreement-in-principle to resolve the Litigation.

Under these circumstances, it is clear that the Settlement Agreement and Settlement were not the result of fraud, collusion, or abandonment of the interests of the Class, but rather were the result of extensive and informed arm's-length negotiations.   *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] . . . mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014) ("[W]here the services of a private mediator are engaged, this fact tends to support a finding that the settlement valuation by the parties was not collusive."); *Simmons v. Enter. Holdings, Inc.*, No. 4:10CV00625AGF, 2012 WL 2885919, at *2 (E.D. Mo. July 13, 2012) (finding settlement to be fair, reasonable, and adequate when parties "participated in mediation sessions with an experienced mediator," and settlement agreement "resulted from intensive, serious, and non-collusive arms-length negotiations").

### B.     Lead Plaintiffs Had Sufficient Information To Determine The Propriety Of Settlement

The parties reached a settlement agreement early in the proceedings, a result consistent with the Federal Rules of Civil Procedure.  *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (noting early resolution of litigation is consistent with Rule 1 which states the Federal Rules of Civil Procedure "'shall be construed and administered to ensure the *just, speedy, and inexpensive determination* of every action'").  Because of the stay on discovery imposed by the PSLRA, Lead Plaintiffs were unable to conduct formal discovery.[6]  However, Lead Plaintiffs, through their counsel, conducted their own thorough factual investigation in connection with preparing the various complaints in the Litigation.  This investigation included, *inter alia*, reviewing and analyzing a vast amount of publicly available information and data concerning the Company and the Individual Defendants and consulting with an expert regarding loss causation and damages issues.  In addition, Lead Plaintiffs received a Freedom of Information Act ("FOIA") response from the Center for Drug Evaluation and Research that included a non-public close-out letter from the Office of Prescription Drug Promotion (the "Letter").  Information contained in the Letter formed an essential piece of the allegations made in both the Second and Third Amended Complaints.  Lead Counsel also carefully analyzed news reports and press releases concerning the preliminary agreements in principle that Aegerion

---

[6] "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *13 (D.N.J. Nov. 10, 2016) ("Courts in this Circuit frequently approve class action settlement[s] despite the absence of formal discovery."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002) ("'[T]he Court need not find that the parties have engaged in extensive discovery.'") (collecting cases).

reached with both the DOJ and the staff of the SEC regarding the ongoing investigations by these agencies related to JUXTAPID.

As a result of these efforts, Lead Plaintiffs and Lead Counsel had a comprehensive understanding of the Litigation and sufficient information to make a well-informed decision regarding the fairness of the Settlement. *See, e.g.*, *In re Ocean Power Techs., Inc., Sec. Litig.*, No. 3:14-CV-3799, 2016 WL 6778218, at *17 (D.N.J. Nov. 15, 2016) (approving settlement and noting that, "[a]lthough there has been no formal discovery, Plaintiff's Counsel had ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement"); *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) ("Despite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of the relevant facts and law.  This factor weighs in favor of approval."); *Eisen*, 2014 WL 439006, at *4 (approving settlement when record established "that all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses").[7]

## C.  Experienced Counsel Recommend The Settlement

In this context, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re Flag Telecom*, 2010 WL

---

[7] Separate and apart from the foregoing, "[c]ase law [also] recognizes that potential difficulty in collecting damages militates in favor of a settlement reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013).  Here, evidence of Aegerion's financial condition – which included a concern raised by an outside auditor about the Company's ability to continue as a going concern – made it very unlikely that Aegerion could withstand a substantial adverse judgment in the Litigation.  That evidence also militates in favor of the proposed Settlement.  *See, e.g.*, *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ.A.00-CV-1014, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (finding defendant's precarious financial condition, which called into doubt its ability to "'withstand a judgment in an amount significantly greater than the [proposed] [s]ettlement,'" weighed in favor of approval of settlement) (alterations in original).

4537550, at *13 (internal quotation marks omitted); *see also Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."). Here, throughout the Litigation, Lead Plaintiffs had the benefit of the advice of knowledgeable counsel with extensive experience in shareholder class action litigation and securities fraud cases. During the course of prosecuting the Litigation, Lead Counsel developed a thorough understanding of the merits of the Litigation and Lead Counsel's belief in the fairness and reasonableness of the Settlement supports the granting of preliminary approval here.[8]

### D.   Number of Objections

Notice to the Class has not yet been issued so the number of objections "can only be assessed preliminarily." *Hochstadt*, 708 F. Supp. 2d at 108. At this time, however, there are no

---

[8] Additionally, further indicating its reasonableness, the proposed Settlement exhibits none of the "obvious deficiencies" that would justify denying preliminary approval. *See, e.g.*, *In re M3*, 270 F.R.D. at 62; *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). In all respects, the terms embodied in the Settlement are customary in nature. In particular, Lead Plaintiffs' recovery from the Settlement Fund will be determined according to precisely the same formula as the recoveries of other Class Members, with the exception of any reimbursement to Lead Plaintiffs of the costs incurred in representing the Class and so approved by the Court, as permitted by the PSLRA. Moreover, the matter of attorneys' fees and expenses is wholly separate from the Settlement and subject to the Court's oversight and approval. Courts have repeatedly recognized that preliminary approval is appropriate when there are "no grounds to doubt the fairness of the Settlement, or any other obvious deficiencies, such as unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810, at *6 (D. Minn. Oct. 18, 2012); *see also In re NASDAQ Market-Makers*, 176 F.R.D. at 102 (noting preliminary approval appropriate when settlement "does not improperly grant preferential treatment to class representatives or segments of the class"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (finding preliminary approval appropriate when "'preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives'").

known objectors to any aspect of the Settlement.  Lead Plaintiffs and Lead Counsel believe that the Settlement as provided in the Settlement Agreement is a fair, reasonable, and adequate resolution of the Litigation, and is in the best interests of the Class Members.  Specifically, it confers a substantial and immediate benefit upon the Class while eliminating:  (i) the uncertainty of future relief after protracted and expensive litigation, including the difficulties of proof of, and possible defenses to, the securities law violations asserted; (ii) the risk that Lead Plaintiffs ultimately may not prevail following a trial on the merits; and (iii) the risk that even if Lead Plaintiffs are successful following trial (and any appeals to a successful verdict), Defendants would not have sufficient resources to satisfy any judgment.

Under these circumstances, the Court should preliminarily approve the proposed Settlement as fair, adequate, and reasonable and instruct that notice of the Settlement be issued to Class Members.  *See, e.g.*, *In re M3*, 270 F.R.D. at 63 ("[T]he only practical way to ascertain the overall level of objection to the proposed settlement is for notice to go forward, and to see how many potential class members choose to opt out of the settlement class or object to its terms at the Final Fairness Hearing.").

## VI.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND MANNER OF CLASS NOTICE AND THE PROOF OF CLAIM AND RELEASE

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound" by the proposed Settlement. Fed. R. Civ. P. 23(e)(1).  "To satisfy due process, the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Hill v. State St. Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *14 (D. Mass. Jan. 8, 2015) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996)).  Here, the proposed form and manner of the Notice satisfy these requirements.

The Claims Administrator will cause the Notice (Exhibit A-1 to Settlement Agreement) to be mailed to all shareholders of record identified by the Company or its transfer agent, as well as to nominees who hold a Class Member's stock in "street name."  A Summary Notice (Exhibit A-3 to Settlement Agreement) also will be published once in the national edition of *The Wall Street Journal* and once over the *Business Wire*.  Moreover, the Settlement Agreement and its exhibits will be posted on the Claims Administrator's website.  This proposed method of giving notice to Class Members is common in securities class actions and is appropriate because it is "the best notice practicable under the circumstances" and will provide "due and sufficient notice to all persons entitled thereto."  *StockerYale*, 2007 WL 2410361, at *2.

Moreover, the content of the Notice describes the general terms of the Settlement, the Fee and Expense Application, and the proposed Plan of Allocation, and provides the date of the Settlement Hearing as well as other details required by the PSLRA.  *Compare* Notice (Exhibit A-1 to Settlement Agreement), *with* 15 U.S.C. § 78u-4(a)(7) (disclosure of settlement terms to class members).  The information also is provided to Class Members in a format that is accessible and easy to read.  The Notice advises Class Members that they have the right to exclude themselves from the Settlement, or to object to any aspect of the Settlement, including the Plan of Allocation and Lead Counsel's Fee and Expense Application.  Moreover, if a Class Member has questions about any aspect of the Settlement, the Notice provides recipients with the contact information for the Claims Administrator (including a toll-free telephone number) and Lead Counsel.  Accordingly, the proposed Notice provides Class Members with all information required by Rule 23(e), the PSLRA, and due process.  *See, e.g.*, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203-04 (D. Me. 2003) (noting "[t]he notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed

settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class" and holding a particular notice satisfied applicable requirements when, as here, it "provide[s] class members with sufficient information to make an informed and intelligent decision about whether to file a claim, seek exclusion from the class, or object to the proposed settlement"). Lead Plaintiffs therefore respectfully request that the Court direct that Class Members be given notice of the pendency of this Litigation and the Settlement in the form and method set forth in the Settlement Agreement.

## VII. PROPOSED SCHEDULE OF EVENTS

Provided that the Court grants preliminary approval to the Settlement, Lead Plaintiffs respectfully request the Court set a schedule of events to govern the remaining procedural aspects of the proposed Settlement, subject to the Court's convenience:

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Deadline for mailing the Notice and Proof of Claim and Release form to Class Members | 21 calendar days after the Court enters the Notice Order ("Notice Date") |
| Deadline for publishing the Summary Notice in *The Wall Street Journal* and over the *Business Wire* | 7 calendar days following the Notice Date |
| Deadline for filing Proof of Claim and Release forms | 120 calendar days following the Notice Date |
| Deadline for submitting exclusion requests or objections | 55 calendar days following the Notice Date |
| Filing of memoranda in support of final approval of the Settlement and Plan of Allocation, and in support of the Fee and Expense Application | 28 calendar days before the Settlement Hearing |
| Filing of reply memoranda in support of final approval of the Settlement and Plan of Allocation, and in support of the Fee and Expense Application | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | Approximately 110 calendar days following execution of the Notice Order |

## VIII.   CONCLUSION

For the foregoing reasons, the Settlement warrants this Court's preliminary approval and Lead Plaintiffs respectfully request this Court enter the Notice Order, set a schedule of events to govern the remaining procedural aspects of the Settlement, and grant such further relief as the Court deems just and reasonable.

Dated: January 17, 2017

Respectfully submitted,

*/s/ Gregg S. Levin*
Gregg S. Levin (BBO # 563771)
Christopher F. Moriarty (*pro hac vice*)
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
E-mails:     glevin@motleyrice.com
                  cmoriarty@motleyrice.com

William H. Narwold (*pro hac vice*)
**MOTLEY RICE LLC**
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:  (860) 882-1676
E-mail:     bnarwold@motleyrice.com

Jack Reise (*pro hac vice*)
Stephen R. Astley (*pro hac vice*)
Sabrina E. Tirabassi (*pro hac vice*)
**ROBBINS GELLER RUDMAN
     & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  (561) 750-3000
Facsimile:  (561) 750-3364
E-mails:     jreise@rgrdlaw.com
                  sastley@rgrdlaw.com
                  stirabassi@rgrdlaw.com

*Counsel for Lead Plaintiffs*

20

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically on this 17th day of January, 2017, to the registered participants as on the Notice of Electronic Filing (NEF).  At this time, I am not aware of any non-registered participants to whom paper copies must be sent.

/s/ *Gregg S. Levin*
Gregg S. Levin